LEONARD W. GARNER, PLAINTIFF, v. MOUNTAINSIDE
BOARD OF ADJUSTMENT, DEFENDANT.

Superior Court of New Jersey
Law Division Union County

Decided March 14, 1986.

*Fred W. Gruen* for plaintiff (*Gruen & Goldstein,* attorneys; *Fred W. Gruen* on the brief).

*Joseph R. Coviello* for defendant.

FELLER, J.S.C. (retired and temporarily assigned on recall).

This is an action in lieu of prerogative writs appealing the action of the Mountainside Board of Adjustment. The property in question is located at 1422 Route 22 in Mountainside and plaintiff herein is a contract purchaser of said property. Plaintiff appeared before the board seeking "bulk variances" under *N.J.S.A.* 40:55D–70c.

### *The Legal And Factual Contentions Of Plaintiff.*

Plaintiff applied for "C" (bulk) variances for construction of an office building. The application was presented at two public hearings (April and May 1984). The board voted at its June 1984 meeting as follows: three members for approval (all three had attended the two previous hearings), two members for disapproval (one of whom had attended the two previous hearings and one of whom had not attended the first hearing) and two abstaining.

Plaintiff contends that under the applicable statute and case law, the above vote constitutes an approval of the variance application, although the abstainers did not abstain for conflict of interest.

Defendant board at its July 1984 meeting adopted two resolutions, each reporting the 3–2 vote; one concluded by its terms that the same constituted an approval of the application and the other concluded by its terms that the same constituted a disapproval of the application.

Plaintiff seeks enforcement of the approving resolution and striking of the disapproved resolution. If the court should determine that the vote constituted a denial of the variance application, plaintiff seeks reversal on the grounds that the denial was arbitrary, unreasonable and capricious. Plaintiff demonstrated positive and negative criteria. Of the two members voting against the application (one of whom was incompe-

tent to vote—Bradshaw—because he had not attended the first hearing), one bottomed his negative vote on his irrelevant conclusion *aliunde* the record that Mountainside had a surplus of office buildings (rather than considerations of hardship and negative criteria).

### The Legal And Factual Contentions Of Defendant Mountainside Board Of Adjustment.

The Mountainside Board of Adjustment had seven permanent members during the time that this application was heard. The chronological breakdown when hearings were held in connection with this application follows.

### Meeting held April 9, 1984.

Present were: Chairman, C. George Novitt
Mr. Hancock
Mr. Heymann
Mr. Kelly
Mr. Largey
Mr. Merenstein
Mr. McNamara
Mr. Tuohy

Plaintiff presents an application to the Mountainside Board of Adjustment for property known as 1422 Route 22, Lot 9 in Block 3–C. The applicant seeks to construct an office building in the OB zone, which permits office buildings, but would be in violation of the Mountainside Zoning Ordinance in the following respects:

*Section 1014(c). Required Conditions.* Front yard of not less than 50 feet. Applicant was showing 36-foot setback.

*Section 1014(c)(7). Buffer Area.* A 20 foot buffer area required. Applicant was showing some areas two feet, other areas eight feet.

*Section 914. Article 2 Definitions.* No. 245. Parking spaces are to be rectangular spaces 9 feet wide and 20 feet long.

Applicant is proposing the parking spaces to be 9 feet wide and 19 feet long.

*Section 914(7).  Driveway.*  The driveway entrance and exit on to New Providence Road requires a 24-foot width.  Applicant is proposing a 20-foot width.

The peculiarity of the layout of this property shows a 24 foot frontage on New Providence Road, a county road, which the applicant seeks to use as a driveway access to and from the subject property.

The first plan as presented showed no ingress or egress from Route 22 and provided that all ingress and egress to the subject property would be from New Providence Road.

The proposed building is 16,945 square feet which at one parking space per 300 square feet would require 57 parking spaces.  The applicant was proposing 69 parking spaces on the original plan, which would be less than the required 9' × 20', namely, 9' × 19'.

*Meeting held May 14, 1984.*

Present were: Vice Chairman, Donald Hancock
Mr. Bradshaw
Mr. Heymann
Mr. Kelly
Mr. Largey
Mr. Merenstein

The applicant was advised that he needs 4 affirmative votes and was represented by attorney, Mr. Gruen, who advised that he was prepared to proceed on that basis.

A revised plan was submitted.  The revised plan shows that a full 20' buffer in the rear is now being provided.  Ingress and egress changes made to provide ingress and egress along Route 22, continuing egress to New Providence Road.

The driveway is reduced to 16 feet to New Providence Road, which eliminates need for a variance.

A 20′ buffer relief is requested in one row of parking stalls at the east end of the lot.

The number of parking spaces is reduced to 63.

Still seeks a 15′ side yard requirement as opposed to 25′ required.

Still seeks the 9′ × 19′ parking stalls and a 36′ setback as opposed to 50′.

*Meeting held June 11, 1984.*

Present were: Chairman, C. George Novitt
Mr. Bradshaw
Mr. Hancock
Mr. Kelly
Mr. Largey
Mr. McNamara

The applicant indicated that if the ingress or egress were limited or restricted to Route 22, he would abandon the project and that, therefore he need an opportunity to exit the property on to New Providence Road.

At this meeting the applicant was advised that two members, namely, Mr. McNamara and Mr. Novitt, were not at the last meeting and that he would need four affirmative votes, or a majority of those present.

He was asked whether he wished to proceed and he advised the chairman that he did wish to proceed to a vote. The motion was made by Mr. Largey to accept the application. The motion was seconded by Mr. Kelly.

The following vote was then taken:

Mr. Bradshaw – No
Mr. Hancock – No
Mr. Heymann – Yes
Mr. Kelly – Yes
Mr. Largey – Yes
Mr. McNamara – Abstained
Mr. Novitt – Abstained

The chairman declared that the application had only three affirmative votes and was, therefore, deemed denied since four affirmative votes were required (which was a majority of those present at the meeting).

*Meeting held July 9, 1984.*

Present were: Chairman C. George Novitt
Mr. Hancock
Mr. Kelly
Mr. Largey
Mr. Bradshaw
Mr. McNamara
Mr. Merenstein
Mr. Tuohy

The board was presented with two resolutions, one denying the application, inasmuch as Mr. Garner, the applicant, only received three affirmative votes and four affirmative votes were required.

One resolution of approval by the three members who voted for the resolution and one resolution of denial by the two members who voted against the resolution.

The board consists of seven members and there were seven members present at the meeting when the vote was actually taken. Therefore, under *N.J.S.A.* 40:55D–9, which requires that all action shall be taken by a majority vote of the members of the municipal agency present at the meeting and since all members were present at the meeting, the applicant needed four affirmative votes in order to prevail on his application.

The prime issue for this court to decide is what effect the fact that two members of the board of adjustment abstained from voting has on the application. There is no question that the vote was in fact three to two in favor of the granting of the variance with two abstentions.

Plaintiff contends that the vote constitutes an approval of the application as a matter of law, since all that was needed to approve the variance was a simple majority of those members

voting. On the other hand, defendant claims that the application needed four of the votes for an approval since seven members of the board were physically present at the meeting when the vote was taken. Two resolutions were adopted at the July 9, 1984 meeting of the board of adjustment, one granting the relief sought by a vote of three to two in favor of the application, the other denied the relief because the application did not receive the statutorily required four votes, a majority of the board members present at the meeting.

*N.J.S.A.* 40:55D–9 requires that all actions taken by municipal agencies must be by a majority vote of the members present at the meeting, except as otherwise provided in the act. This statute also provides that no action may be taken without a quorum being present. As originally drafted, this statute provided that all actions were to be taken by a majority of a quorum, but was amended to read as it appears presently. A quorum consists of a majority of the full membership of a board. *N.J.S.A.* 40:55D–6.

*N.J.S.A.* 40:55D–10.2 governs the voting eligibility in such matters. The statute reads as follows:

> A member of a municipal agency who was absent from one or more of the meetings at which a hearing was held shall be eligible to vote on the matter upon which the hearing was conducted, not withstanding his absence from one or more of the meetings; provided however that such board member has available to him the transcript or recording of all of the hearing from which he is absent, and certifies in writing to the board that he has read such transcript or listened to such recording.

In the case at bar the variances sought were for relief from zoning requirements as follows:

1. for a side yard buffer of 15' instead of the 25' required by the zoning ordinance;
2. for the dimensions of the parking stalls to be 9' × 19' instead of 9' × 20' as required by the zoning ordinance; and
3. for a front set back of 36' instead of 50' as required by the zoning ordinance.

Based on this, this court finds that the general rule requires a majority of those members present to grant the requested

relief, since the application was for a subsection "C" variance—a permitted use.

This being the case the question presented to this court may be simply stated as: what effect do the two abstentions have on the vote to grant this application before the board of adjustment? While the two members were physically present at the meeting, they could not vote under the provisions of *N.J.S.A.* 40:55D–10.2. They both stated for the record that they had missed one of the hearings at which this application was made and had not reviewed the transcript or heard the recording. It is, therefore, held that these two members of the board of adjustment were ineligible to vote under *N.J.S.A.* 40:55D–10.2. Consequently, are they to be counted among those present?

In *Andrews v. California Coastal Comm.*, 189 *Cal.Rptr.* 279 (App.Div.1983) the California Court of Appeals had to deal with a very similar problem. This case involved the appeal from a decision of the California Coastal Commission denying plaintiff subdivision approval for his property. Eventually a hearing was held on this appeal before the California Coastal Commission. During the hearing nine members of the commission were present. After completion of the proceedings a tenth commissioner entered the room. This commissioner had not heard the case and was not familiar with it. When the vote was taken five commissioners voted for approval while four disapproved and one commissioner abstained. The chairman determined that plaintiff's case failed because the applicable statute required the majority vote of those present, thus six votes were necessary for approval.

This is similar to the case *sub judice*, since the chairman here determined that four votes were necessary to approve the granting of relief from the zoning requirements because seven members were present.

The court in *Andrews* found that since the tenth commissioner was not eligible to vote on the issue, his mere physical

presence in the room at the time a vote was taken should not have been considered for any purpose.

The statute in question here and the California statute are very similar and so are the facts of the two cases. While it is true that *Andrews* is not binding precedent on this court, it is still persuasive authority for the proposition that if a member of the board of adjustment is ineligible to vote under the appropriate statute, then his mere presence at voting time should not be counted for either quorum purposes or as part of the required votes necessary to form a majority.

Several New Jersey cases lend credence to this premise. For example, in the case of *Aurentz v. Little Egg Harbor Plan. Bd.*, 171 *N.J.Super.* 135 (Law Div.1979) the court detailed the common law rule which basically provides that a statute such as the one in question here, which requires only a vote of "the commissioners present," brings into play the axiom that abstentions are to be counted as affirmative votes. The only two recognized exceptions to this rule involve circumstances which require a specific, fixed number of actual affirmative votes for a majority or the abstentions are due to disqualification for a conflict of interest. *See Mann v. Paterson Hous. Author.*, 20 *N.J.Super.* 276 (Law Div.1952). *See also Kozusko v. Garretson*, 102 *N.J.L.* 508 (Sup.Ct.1926); *Quinn v. Sea Isle City*, 77 *N.J.L.* 428 (Sup.Ct.1909). Another limitation to this common law rule is when the abstaining voters have expressed the fact that they are opposed to the matter being voted on, their silence should not be considered as affirmative votes, but rather negative votes. *Kozusko, supra.*

The court in *Aurentz, supra,* stated as follows:

In *Meixell v. Hellerton Boro. Counc.*, 370 *Pa.* 420, 88 *A.*2d 594 (1952), the Supreme Court of Pennsylvania held that since a vote of two councilmen was illegal because of disqualification, *neither their vote nor presence should be counted in computing a quorum or majority.* In *Coles v. Trustees of Williamsburg*, 10 *Wend.* 659 (N.Y.1833), where a petition for the opening of a street was presented to the governing body and although it appeared that all five trustees were present, only two voted for the petition and the other three declined to vote on the ground of interest, the court held that such votes in

favor of the petition was not legally sufficient. The court noted first that the governing statute required three out of five trustees to make a quorum, and secondly, since three of the instant trustees were incompetent by law to vote, so far as such vote was concerned they were not trustees and thus, there was no quorum.

In *Alamo Heights v. Gerety*, 264 *S.W.*2d 778 (Tex.Civ.App.1954), the court held that where a city council is disqualified from voting upon a particular matter by reason of personal interest therein, the situation is comparable to that where a vacancy in the council membership has occurred by reason of death, resignation or disqualification. [at 140 emphasis supplied]

The case under consideration is very similar to the exception when a member of the board is disqualified for a conflict of interest. In that case the abstaining member would not be counted for quorum purposes as part of a majority of those present.

A more recent case involving a vote in a disciplinary hearing of a harness driver before the racing commission held that where a member of the commission excused himself from the proceeding his presence should not be counted towards a quorum. *King v. N.J. Racing Comm.*, 205 *N.J.Super.* 411, 415 (App.Div.1985).

■ This court, therefore, finds that the two abstainers in this case were not eligible to vote in this matter because they were disqualified under *N.J.S.A.* 40:55D–10.2 and they should not be considered present for the purposes of *N.J.S.A.* 40:55D–9, in the same way members of the board are not considered present for purposes of a quorum or voting if there is a conflict of interest. *Aurentz, supra.*

■ In the case under consideration here, no action could have been taken by the board of adjustment unless a quorum was present. *N.J.S.A.* 40:55D–9(b). A quorum means a majority of the full authorized membership of a municipal agency. *N.J.S.A.* 40:55D–6. The Mountainside Board of Adjustment is made up of seven members. Therefore, a quorum equals four members. In this case a quorum was present, not including the members of the board who were ineligible to vote, so the board could take action on the application at this meeting.

The number of votes in favor of granting the relief sought in this case is a simple majority of the five members who were eligible to vote, or three favorable votes. The chairman of the board of adjustment and the board's attorney were both operating under the mistaken belief that *N.J.S.A.* 40:55D–9 required four votes in favor of the application for approval. However the two abstentions should not have been counted as "those present."

It is, therefore, the opinion of this court that for the reasons stated above, the vote of three to two in favor of granting the relief sought, with two abstentions, because these members were ineligible to vote under the statute and were not to be counted as present for this purpose at the meeting, constitutes an approval of the application. The resolution of the board, adopted on July 9, 1984, holding that the application in this matter is denied because the application did not receive four votes, shall be set aside.

There is no need for this court to consider plaintiff's argument in the alternative that the board's denial of the application was arbitrary unreasonable or capricious, since the resolution denying the application will be set aside.

Please submit a judgment accordingly within ten days.